**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 19-20063** |
| **SQLC SENIOR LIVING CENTER** | § | |
| **AT CORPUS CHRISTI, INC. d/b/a** | § | **CHAPTER 11** |
| **MIRADOR** | § | |
| | § | |
| **Debtor.** | § | |

## <u>CHAPTER 11 PLAN</u>

**DATED: February 8, 2019**

**TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF CONSTRUCTION AND
INTERPRETATION, AND COMPUTATION OF TIME..........................................2
Section 1.01    Scope of Defined Terms; Rules of Construction and
Interpretation .................................................................. 2
Section 1.02    Defined Terms.............................................................. 2
Section 1.03    Computation of Time ................................................... 17
Section 1.04    Reference to Monetary Figures ..................................... 17
Section 1.05    Exhibits and Plan Supplement ..................................... 17
Section 1.06    Deemed Acts ............................................................... 17

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR..........18
Section 2.01    Administrative Claims ................................................. 18
Section 2.02    Bar Dates .................................................................... 18
Section 2.03    Priority Tax Claims ..................................................... 18
Section 2.04    Professional Fee Claims .............................................. 19
Section 2.05    DIP Facility Claims ..................................................... 19

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................19
Section 3.01    General Notes on Classification and Treatment of Classified
Claims and  Interests .................................................... 19
Section 3.02    Voting; Presumptions ................................................. 20
Section 3.03    Identification of Claims and Interests ......................... 20

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ...............................21
Section 4.01    Priority Non-Tax Claims ............................................. 21
Section 4.02    Secured Bond Claims .................................................. 21
Section 4.03    Resident Claims .......................................................... 23
Section 4.04    General Unsecured Claims .......................................... 23
Section 4.05    Miscellaneous Secured Claims .................................... 23
Section 4.06    SQLC Claims ............................................................... 24
Section 4.07    Seniority Claims.......................................................... 24
Section 4.08    Interests ...................................................................... 24

ARTICLE V ACCEPTANCE OR REJECTION OF THIS PLAN .............................24
Section 5.01    Designation of Unimpaired Classes ............................ 24
Section 5.02    Designation of Impaired Classes ................................ 25
Section 5.03    Classes Entitled to Vote .............................................. 25
Section 5.04    Classes Not Entitled to Vote ....................................... 25
Section 5.05    Date of Distributions on Account of Allowed Claims ... 25
Section 5.06    Sources of Cash for Plan Distributions ...................... 25
Section 5.07    Cram Down – Nonconsensual Confirmation ............... 25

ARTICLE VI MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST
EFFECTIVE DATE GOVERNANCE ........................................................26
Section 6.01    Sale of the Acquired Property ..................................... 26
Section 6.02    Application of Sale Proceeds ...................................... 26
Section 6.03    Gift Reserve Funding .................................................. 27

Section 6.04     Available Cash ........................................................................ 27
Section 6.05     Other Assets ........................................................................... 27
Section 6.06     Retained Causes of Action ..................................................... 27
Section 6.07     Vesting of Liquidating Trust Assets ...................................... 28
Section 6.08     Asset Purchase Agreement and Related Documents ............ 28
Section 6.09     Creation of Liquidating Trust................................................ 28
Section 6.10     Governance Documents .......................................................... 28
Section 6.11     Officers and Directors ............................................................ 28
Section 6.12     Cancellation of Existing Secured Claims............................... 29
Section 6.13     Cancellation of Interests ........................................................ 29
Section 6.14     Authorization for Transaction ................................................ 29
Section 6.15     Preservation of Rights of Action; Settlement ....................... 29
Section 6.16     Employee Benefit Plans .......................................................... 30
Section 6.17     Exclusivity Period ................................................................... 30
Section 6.18     Effectuating Documents .......................................................... 30
Section 6.19     Exemption from Certain Transfer Taxes................................. 31
Section 6.20     Liquidating Trustee Closing of the Chapter 11 Case ............ 31

ARTICLE VII LIQUIDATING TRUST AND LIQUIDATING TRUSTEE...............................31
Section 7.01     The Liquidating Trust ............................................................. 31
Section 7.02     The Creation of the Liquidating Trust ................................... 31
Section 7.03     Purpose of the Liquidating Trust............................................ 31
Section 7.04     Funding of Res of Trust .......................................................... 32
Section 7.05     Administration of the Liquidating Trust ................................ 32
Section 7.06     The Liquidating Trustee .......................................................... 32
Section 7.07     Retention of Professionals ...................................................... 33
Section 7.08     Compensation of the Liquidating Trustee.............................. 33
Section 7.09     Liquidating Trust Expenses..................................................... 33
Section 7.10     Liability; Indemnification ....................................................... 34
Section 7.11     Powers and Duties of the Liquidating Trustee ...................... 34
Section 7.12     Distribution Procedures .......................................................... 35
Section 7.13     Closing of the Chapter 11 Case.............................................. 35
Section 7.14     Termination ............................................................................. 35
Section 7.15     Maintenance of Books and Records........................................ 35

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ....................36
Section 8.01     Timing and Delivery of Distributions..................................... 36
Section 8.02     Method of Cash Distributions ................................................ 36
Section 8.03     Failure to Negotiate Checks ................................................... 36
Section 8.04     Fractional Dollars.................................................................... 36
Section 8.05     Compliance with Tax Requirements....................................... 36
Section 8.06     De Minimis Distributions........................................................ 37
Section 8.07     Setoffs ..................................................................................... 37
Section 8.08     Distribution Record Date ....................................................... 37

ARTICLE IX RESERVES ADMINISTERED BY THE LIQUIDATING TRUST ....................37
Section 9.01     Establishment of Reserve Accounts, Other Assets and
                 Beneficiaries......................................................................... 37

Section 9.02      Undeliverable Distribution Reserve .................................................... 37
Section 9.03      Claims Reserve ................................................................................... 38
Section 9.04      Gift Reserve ....................................................................................... 38
Section 9.05      Liquidating Trust Reserve ................................................................. 38
Section 9.06      Litigation Proceeds Reserve .............................................................. 39

ARTICLE X EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
        AGREEMENTS ................................................................................................... 39
Section 10.01     Assumption/Rejection ....................................................................... 39
Section 10.02     Cure Amounts .................................................................................... 40
Section 10.03     Assumed Executory Contracts and Unexpired Leases ........................ 41
Section 10.04     Insurance Policies .............................................................................. 41
Section 10.05     Pass-through ...................................................................................... 41
Section 10.06     Claims Based on Rejection of Executory Contracts and
                  Unexpired Leases ............................................................................... 41
Section 10.07     Reservation of Rights ........................................................................ 42
Section 10.08     Nonoccurrence of Effective Date ...................................................... 42

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
        UNLIQUIDATED CLAIMS ................................................................................. 42
Section 11.01     Expunging of Certain Claims ............................................................ 42
Section 11.02     Objections to Claims ......................................................................... 42
Section 11.03     Estimation of Claims ......................................................................... 43
Section 11.04     No Distributions Pending Allowance ................................................. 43
Section 11.05     Distributions After Allowance ........................................................... 43
Section 11.06     Reduction of Claims .......................................................................... 44

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND
        CONSUMMATION OF THIS PLAN ................................................................... 44
Section 12.01     Conditions Precedent to Confirmation ............................................... 44
Section 12.02     Occurrence of the Effective Date ....................................................... 44
Section 12.03     Substantial Consummation ................................................................ 45
Section 12.04     Waiver of Conditions ........................................................................ 45
Section 12.05     Revocation, Withdrawal, or Non-Consummation............................... 45

ARTICLE XIII AMENDMENTS AND MODIFICATIONS ....................................... 46

ARTICLE XIV RETENTION OF JURISDICTION .................................................... 46

ARTICLE XV EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS .............. 48
Section 15.01     Compromise and Settlements ............................................................. 48
Section 15.02     Satisfaction of Claims ....................................................................... 48
Section 15.03     Releases ............................................................................................. 48
Section 15.04     Exculpation ....................................................................................... 51
Section 15.05     Permanent Injunction ........................................................................ 51
Section 15.06     Setoffs ............................................................................................... 53
Section 15.07     Recoupment ....................................................................................... 53
Section 15.08     Release of Liens ................................................................................ 54
Section 15.09     Good Faith ......................................................................................... 54

ARTICLE XVI MISCELLANEOUS PROVISIONS ................................................54
 Section 16.01 Severability of Plan Provisions .......................... 54
 Section 16.02 Confidentiality of Information Related to Patient Care
       Ombudsman ................................................ 54
 Section 16.03 Successors and Assigns ....................................... 55
 Section 16.04 Binding Effect .................................................... 55
 Section 16.05 Notices................................................................ 55
 Section 16.06 Term of Injunctions or Stay ............................... 56
 Section 16.07 No Admissions ................................................... 56
 Section 16.08 Notice of the Effective Date............................... 56
 Section 16.09 Default Under Plan............................................. 57
 Section 16.10 Governing Law................................................... 57
 Section 16.11 Plan Documents ................................................. 57
 Section 16.12 Entire Agreement ............................................... 57
ARTICLE XVII CONFIRMATION REQUEST ...................................................58

## INTRODUCTION

SQLC Senior Living Center at Corpus Christi, Inc. d/b/a Mirador ("Mirador" or the "Debtor") filed for chapter 11 bankruptcy protection on February 8, 2019 (the "Petition Date"). The Debtor hereby proposes the following *Chapter 11 Plan* (the "Plan") for the resolution of outstanding creditor Claims against, and interests in, the Debtor. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtor's history, business, historical financial information, assets, and for a summary and description of this Plan and certain related matters. No materials other than the Disclosure Statement, this Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtor for use in soliciting acceptances or rejections of this Plan.

The Debtor previously determined, in the discharge of its statutory fiduciary duties under the Bankruptcy Code, that the sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code or otherwise and the distribution of the sale proceeds pursuant to a Chapter 11 plan is in the best interests of the Debtor, its creditors, and the Debtor's Estate. Accordingly, the Debtor is selling substantially all of its assets to an unrelated third-party pursuant to Bankruptcy Court order and this Plan proposes to, among other things, distribute the cash proceeds thereof and all remaining assets of the Debtor to creditors pursuant to the priorities set forth in the Bankruptcy Code. The execution and consummation of this Plan will be facilitated through the establishment of a trust to, among other things, resolve and compromise Claims, distribute the Debtor's remaining assets and wind-down the Debtor's affairs.

Under the Plan, all Allowed Administrative Claims, the DIP Facility Claims, Allowed Priority Tax Claims, Allowed Non-Priority Tax Claims and Allowed Miscellaneous Secured Claims shall be paid in full on or promptly after the Effective Date. Resident Claims shall be paid in the ordinary course of business as they become due as provided under the applicable Residence Agreement. The Allowed Secured Bond Claims will be paid from the Net Cash Proceeds of the sale of the Bondholders' collateral after payment of the DIP Facility Claims and less a certain Claims Reserve Contribution, Liquidating Trust Contribution and Gifted Amount. Holders of the SQLC Claims and Holders of the Seniority Claims shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Claims. General Unsecured Claims will receive their Pro Rata share of (a) the Gift Reserve after payment of Allowed Plan Carve Out Claims; and (b) Retained Causes of Action Proceeds. Holders of Allowed Interests against the Debtor shall be cancelled and extinguished, and the Holders of Interests shall not receive or retain any property or assets on account of their Interests.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

# ARTICLE I

## DEFINED TERMS, RULES OF CONSTRUCTION AND INTERPRETATION, AND COMPUTATION OF TIME

**Section 1.01     Scope of Defined Terms; Rules of Construction and Interpretation**

For purposes of this Plan, except as expressly defined elsewhere in this Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan.  Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular.  The masculine gender shall include the feminine, and the feminine gender shall include the masculine.  The terms "and" and "or," as used herein, shall be construed both conjunctively and disjunctively, and each shall include the other whenever applicable.

For purposes of this Plan, (a) except as provided in Article XIII, any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) except as provided in Article XIII, any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (c) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Plan; (d) the words "herein," "hereto," and "hereof" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (f) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**Section 1.02     Defined Terms**

(1)     **Acquired Causes of Action** means all Causes of Action that the Debtor or its Estate may hold and that are purchased by the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

(2)     **Acquired Property** means the Debtor's Assets that are purchased by the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

(3)     **Additional Agreements** means any and all executory contracts and unexpired leases other than Residence Agreements and Former Residence Agreements.

(4)     **Administrative Claims** means a Claim for costs and expenses of administration pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b)

all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; (d) any Cure Costs; and (e) all Claims for compensation or expense reimbursement for making a substantial contribution in the chapter 11 Case pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5) Allowed by the Bankruptcy Court.

(5)     **Administrative Claims Bar Date** shall have the meaning set forth in Section 2.02 of this Plan unless the Bankruptcy Court orders otherwise.

(6)     **Affiliate** has the meaning set forth in Bankruptcy Code section 101(2).   For purposes of ARTICLE XVI of this Plan and the definition of Related Person, an Affiliate of a Person shall also include another Person controlling, controlled by or under common control with such first Person.  For purposes of this definition, "control" means, when used with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract, or otherwise, and the terms "controlling" and "controlled" have correlative meanings.

(7)     **Allowed** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof (i) as to which no objection to allowance has been interposed on or before the latter of (a) the Claims Objection Deadline or (b) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Bankruptcy Schedules as liquidated, non-contingent and undisputed; (ii) as to which any objection to its allowance has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; (iii) as to which liability of the Debtor and the amount thereof has been determined and expressly allowed by a Final Order; (iv) as to which the liability of the Debtor and the amount thereof are determined and expressly allowed by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (v) that is expressly deemed allowed in a liquidated amount in this Plan; provided, however, that with respect to an Administrative Claim, "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtor, the Indenture Trustee, or the Liquidating Trustee (1) have not interposed a timely objection or (2) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; provided further that the amount of any Secured Claim or Miscellaneous Secured Claim for purposes of this Plan shall be determined in accordance with the Bankruptcy Code, including without limitation sections 502(b)(6), 503(b), and 506.

(8)     **Allowed Plan Carve Out Claims** means the Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims.

(9)     **Asset Purchase Agreement** means the agreement for the purchase and sale of the Acquired Property between the Debtor and the Purchaser, as amended and restated, or otherwise modified from time to time.  If the Stalking Horse is the Purchaser, the Stalking Horse APA shall be the Purchase and Sale Agreement.

(10)    **Assets** means all of the Debtor's assets and property, including the Facility.

(11)    **Assigned Contracts** means Additional Agreements (i) designated by the Purchaser as an Assigned Contract; and (ii) assumed by the Debtor and assigned to the Purchaser, on or before the Closing Date pursuant to the Asset Purchase Agreement, and as set forth in this Plan.

(12)    **Assigned Residence Agreements** means the Residence Agreements and the Former Residence Agreements that are assumed by the Debtor and assigned to the Purchaser in accordance with the Bid Procedures.

(13)    **Available Cash** means all Cash and Cash Equivalents of the Debtor, determined in accordance with generally accepted accounting principles in the United States, as of 11:59 PM on the date immediately before the Closing.

(14)    **Avoidance Actions** means any and all actual or potential Claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a).

(15)    **Avoidance Actions Proceeds** means the proceeds of the resolution of Avoidance Actions.

(16)    **Auction** means the Bankruptcy Court ordered event by which competing bids are obtained for the Proposed Acquired Property as contemplated by the Bid Procedures Order.

(17)    **Ballot** means the document for accepting or rejecting this Plan, in the form approved by the Bankruptcy Court.

(18)    **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date as heretofore or hereafter amended.

(19)    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division or any other bankruptcy court having jurisdiction over the chapter 11 Case from time to time.

(20)    **Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

(21)    **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such schedules may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(22)   **Bankruptcy SOFAs** means the statements of financial affairs and related financial information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(23)   **Bar Date(s)** means the applicable date(s) designated by the Bankruptcy Court as the last date for Filing Proofs of Claims or Interests in the chapter 11 Case.

(24)   **Bid Procedures** means those certain Bid Procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Order.

(25)   **Bid Procedures and Sale Motion** means that certain *Emergency Motion for (a) Entry of an Order Approving (1) the Asset Purchase Agreement and Authorizing the Debtor to Enter into the Asset Purchase Agreement and comply with its Obligations Thereunder; (2) Related Bid Protections; (3) the Procedures for the Solicitation of Higher and Better Offers; (4) the Form and Manner of Notice; (5) the Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (B) Entry of an Order Approving (1) the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (2) the Assumption and Assignment of Certain Contracts and Unexpired Leases* Filed on the Petition Date.

(26)   **Bid Procedures Order** means that certain *Order Approving (1) the Asset Purchase Agreement and Authorizing the Debtor to Enter into the Asset Purchase Agreement and comply with its Obligations Thereunder; (2) Related Bid Protections; (3) the Procedures for the Solicitation of Higher and Better Offers; (4) the Form and Manner of Notice; (5) the Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases*, which was entered by the Bankruptcy Court.

(27)   **Bond Claims** means all Claims arising from or relating to the Series 2017A Bonds and the corresponding obligations.

(28)   **Bond Financing Documents** means, collectively, the Master Indenture, the Bond Indenture, the Loan Agreement, and the Series 2017A Note.

(29)   **Bond Indenture** means that certain Indenture of Trust dated as of March 1, 2017, by and between the Indenture Trustee and the Issuer, together with all supplements, amendments and modifications thereto.

(30)   **Bondholders** means the beneficial owners of the Series 2017A Bonds.

(31)   **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Houston, Texas.

(32)   **Case** means the bankruptcy case commenced under chapter 11 of the Bankruptcy Code by the Debtor, currently pending before the Bankruptcy Court.

(33)   **Cash** means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

(34)  **Cash Equivalents** means any item or asset of Debtor readily converted to Cash, such as bank accounts, marketable securities, treasury bills, certificate of deposit, commercial paper maturing less than one year from date of issue, or other liquid investments.

(35)  **Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the chapter 11 Case, including through the Effective Date.

(36)  **Claim** means a claim, whether or not asserted or Allowed, as defined in Bankruptcy Code section 101(5).

(37)  **Claim Objection Deadline** means the first Business Day, which is at least 120 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with this Plan.

(38)  **Claims Reserve** means the sum of (a) all budgeted expenses (including Professional Fees) set forth in the DIP Budget which are incurred and unpaid as of the Closing, but only to the extent any such expense is not greater than the budgeted line item for such expense and such expense exceeds the amount of any retainer or deposit held by the party to whom the expense is owed; and (b) the Plan Carve Out.

(39)  **Class** means a category of Claims or Interests as set forth in Section 3.03 pursuant to Bankruptcy Code section 1122.

(40)  **Closing** means the closing of the sale of the Acquired Property to the Purchaser in accordance with the Sale Order and/or the Confirmation Order.

(41)  **Closing Date** means the date of the Closing.

(42)  **Collateral** means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(43)  **Combined Hearing** shall mean the Confirmation Hearing and the Sale Hearing, as such hearing(s) may be continued from time to time.

(44)  **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the docket of the chapter 11 Case.

(45)  **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in the chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

(46)     **Confirmation Hearing** means the hearing(s) held by the Bankruptcy Court to consider Confirmation of this Plan pursuant to Bankruptcy Code section 1129, which may be combined with the Sale Hearing, as such hearing may be continued from time to time.

(47)     **Confirmation Order** means the order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

(48)     **Consummation** means the occurrence of the Effective Date, which shall take place simultaneously with the completion of the Closing.

(49)     **Contributed Available Cash** means Available Cash that is required to fund the Claims Reserve and the Liquidating Trust Reserve pursuant to this Plan.

(50)     **Creditor** means any Person who holds a Claim against any Debtor.

(51)     **Cure Costs** means all costs required of the Debtor to cure any and all monetary defaults including pecuniary losses, pursuant to Bankruptcy Code section 365, of the Debtor arising under any executory contract or unexpired lease.

(52)     **Debtor** means SQLC Senior Living Center at Corpus Christi d/b/a Mirador.

(53)     **DIP Budget(s)** means the budget(s) approved as part of the DIP Orders entered in the chapter 11 Case.

(54)     **DIP Facility Claims** means a Claim held by the DIP Lenders for all debts, indebtedness, obligations, covenants, and duties of payment and performance arising under or relating to the DIP Facility Loan Agreement or the DIP Orders, including any and all accrued but unpaid interest and any unpaid fees or charges arising under the DIP Facility Loan Agreement.

(55)     **DIP Facility Loan Agreement** means the $2,000,000 Senior Secured Super-priority Debtor-in-Possession Note and Purchase Agreement, dated as of February 12, 2019, by and among the DIP Lenders and the Debtor, together with any amendments, modifications or supplements thereto.

(56)     **DIP Lenders** means the lender or lenders party to the DIP Facility Loan Agreement.

(57)     **DIP Orders** means the Interim DIP Order and the Final DIP Order, together with any amendments, modifications or supplements thereto.

(58)     **Disallowed** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

(59)     **Disclosure Statement** means the *Disclosure Statement for the Debtor's Chapter 11 Plan*, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

(60)   **Disputed** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or Disallowed pursuant to this Plan or an order of the Bankruptcy Court (i) which has been Scheduled, or hereafter is listed on the Bankruptcy Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties (or, in the case of the Plan Carve Out Claims, which has not been resolved by written agreement of the parties and the Indenture Trustee or an order of the Bankruptcy Court with respect to which the Indenture Trustee have had notice and an opportunity to object); (ii) proof of which was required to be Filed but as to which a Proof of Claim or Interest was not timely or properly Filed; (iii) proof of which was timely and properly Filed and which has been or hereafter is listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent; (iv) that is disputed in accordance with the provisions of this Plan; or (v) as to which the Debtor, as applicable, or the Indenture Trustee or the Liquidating Trustee have interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtor or the Indenture Trustee or the Liquidating Trustee in accordance with applicable law, which objection or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition by the Debtor or the Indenture Trustee or the Liquidating Trustee of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(61)   **Distribution Date** means the date(s), occurring as soon as practicable after the Effective Date, upon which distributions are made pursuant to the terms of this Plan to Holders of Allowed Administrative Claims, and other Allowed Claims; provided, however, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

(62)   **Distribution Record Date** means the close of business on the fifth (5th) Business Day following the Effective Date.

(63)   **Distribution Reserve Account(s)** means one or more of the following accounts established by the Liquidating Trustee pursuant to this Plan: the Claims Reserve, the Gift Reserve, the Undeliverable Distribution Reserve, the Liquidating Trust Reserve, and/or the Litigation Proceeds Reserve.

(64)   **Effective Date** means the first Business Day on which all conditions precedent set forth in Section 12.02 of this Plan have been satisfied or waived as permitted hereunder.

(65)   **Employee Benefit Plans** means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, offices or employees (whether salaried or hourly, active or retired) of the Debtor.

(66)   **Entity** has the meaning set forth in Bankruptcy Code section 101(15).

(67)  **Entrance Fee** means the entrance fee that a Resident or Former Resident is obligated to pay the Debtor under the terms of a Residence Agreement or Former Residence Agreement, as applicable.

(68)  **Interest** shall mean any equity interest or proxy related thereto in the Debtor, and represented by duly authorized, validly issued, and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, inchoate or otherwise, in the Debtor, or right to convert into such an interest or acquire any interest of the Debtor, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

(69)  **Estate** means the estate created for the Debtor in its chapter 11 Case pursuant to Bankruptcy Code section 541.

(70)  **Exhibit** means an exhibit annexed either to this Plan, the Plan Documents, or the Disclosure Statement or Filed as part of the Plan Supplement.

(71)  **Facility** means the 228-unit continuing care retirement community comprised of 271,455 square feet of developed property on approximately 17 acres of land in Corpus Christi, Texas, owned and operated by the Debtor.

(72)  **File, Filed or Filing** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the chapter 11 Case.

(73)  **Final Order** means an Order of the Bankruptcy Court: (i) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for re-argument, rehearing, or reconsideration has expired and to which no appeal, petition for writ of certiorari, or other appellate review, or proceeding for re-argument, rehearing, or reconsideration shall be pending; (ii) as to which any right to appeal, petition for certiorari, or move for re-argument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (iii) as to which an appeal, writ of certiorari, motion for re-argument or rehearing has been Filed or sought and such order shall not have been stayed.

(74)  **Free and Clear** means free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in this Case, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtor or the Estate, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

(75)  **Former Residence Agreements** means the Residence Agreements of Former Residents.

(76)    **Former Residents** means a Resident of the Facility where occupancy has terminated or will terminate before the Closing Date (including Residents who have provided a termination notice prior to the Closing Date) or under which a refund obligation is otherwise triggered prior to the Closing Date.

(77)    **General Unsecured Claim** means any Claim that is not Secured or entitled to priority under the Bankruptcy Code.

(78)    **Gift Reserve** means the Distribution Reserve Account established for the Gifted Amount.

(79)    **Gifted Amount** means Cash in the amount of $50,000.00 to be transferred to the Liquidating Trust as provided in this Plan, but which would otherwise be distributed to the Indenture Trustee on account of the Allowed Secured Bond Claims.

(80)    **Governance Documents** means any certificate of incorporation, certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtor in effect as of the Petition Date.

(81)    **Holdback Escrow Account** means the account holding the Holdback Escrow Amount.

(82)    **Holdback Escrow Agreement** means the escrow agreement based on the form attached as an exhibit to the Stalking Horse APA.

(83)    **Holdback Escrow Amount** means Five Hundred Thousand Dollars ($500,000.00) to be held in escrow and disbursed pursuant to the Holdback Escrow Agreement pursuant to the Stalking Horse APA.

(84)    **Holder** means the beneficial holder of any Claim or Interest.

(85)    **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

(86)    **Indenture Trustee** means UMB Bank, N.A., not individually, but as master trustee pursuant to the Master Indenture, together with UMB Bank, N.A., not individually, but as bond trustee pursuant to the Bond Indenture.

(87)    **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute or statutes.

(88)    **Issuer** means the Tarrant County Cultural Education Facilities Finance Corporation, a nonstock nonprofit cultural education facilities finance corporation duly organized and existing under the laws of the State of Texas.

(89)    **Life Care Residence Agreement** means a Residence Agreement providing for the continuum of care of the Resident or Former Resident at the Facility known as the life care benefit as set forth in the Residence Agreement.

(90)  **Life Care Resident** means any Resident or Former Resident who has entered into a Life Care Residence Agreement with the Debtor.

(91)  **Lien** means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(92)  **Liquidating Trust** means the entity created pursuant to Section 7.02 of this Plan.

(93)  **Liquidating Trust Agreement** means the document titled "Liquidating Trust Agreement" approved and entered into in accordance with this Plan pursuant to which the Liquidating Trust will be established and administered.

(94)  **Liquidating Trust Assets** means the assets transferred to the Liquidating Trust, which are: (a) Retained Causes of Action, including the attorney-client privilege related to all Retained Causes of Action; (b) Distribution Reserve Accounts; (c) Other Assets; (d) any such other assets identified in the Plan Supplement; (e) Unclaimed Property; and (f) the Closing Accounts Receivable and proceeds thereof as set forth in the Asset Purchase Agreement.

(95)  **Liquidating Trust Reserve** means that Distribution Reserve Account established in accordance with Section 9.05 of this Plan.

(96)  **Litigation Proceeds Reserve** means the Distribution Reserve Account established for the Retained Causes of Action Proceeds.

(97)  **Loan Agreement** means that certain loan agreement dated as of March 1, 2017 by and between Issuer and the Debtor.

(98)  **Master Indenture** means that certain Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement dated as of March 1, 2010 and effective as of March 1, 2017, by and between the Indenture Trustee and the Issuer, together with all supplements, amendments and modifications thereto.

(99)  **Miscellaneous Secured Claim** means any Secured Claim against the Debtor other than the Secured Bond Claims, the DIP Claims and any portion of the SQLC Claims.

(100)  **Net Proceeds** means all proceeds received from the sale, disposition, collection or other monetization of any Other Asset, less reasonable and customary out-of-pocket expenses incurred by the Liquidating Trustee in connection with such sale, disposition, collection or other monetization.

(101)  **Net Sale Proceeds** means the remaining Sale Proceeds, if any, after deduction for (i) the Break-Up Fee (as defined in the Stalking Horse APA), to the extent payable under the Bid Procedures; (ii) any ancillary fees payable in connection with the Transaction(s) (other than Professional Fees, Plan Carve Out Claims and any other fees separately treated and addressed under this Plan); and (iii) any price adjustments pursuant to the Asset Purchase Agreement, including but not limited to post-closing adjustments or all other amounts which reduce the amount of proceeds payable to the Debtor pursuant to and in accordance with the Asset Purchase Agreement.

(102)  **Non-Life Care Residents** means any Resident who is not a Life Care Resident.

(103)  **Order** means any award, decision, writ, injunction, judgment, order or decree entered, issued, made, or rendered by any Governmental Authority, or by any arbitrator.

(104)  **Other Asset(s)** means any Asset(s) of the Debtor that are not transferred to the Purchaser at Closing, including but not limited to Unclaimed Property.

(105)  **Patient Care Ombudsman** means any patient care ombudsman appointed by the United States Trustee under section 333 of the Bankruptcy Code in the chapter 11 Case, in his capacity as patient care ombudsman.

(106)  **Person** means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

(107)  **Petition Date** means February 8, 2019, the date that the Debtor filed the chapter 11 Case.

(108)  **Plan** means this *Chapter 11 Plan*, including any Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(109)  **Plan Carve Out** means $871,000, the sum of all estimated Allowed Plan Carve Out Claims.  To the extent that any Allowed Plan Carve Out Claims are paid before the Plan Carve Out is provided to the Liquidating Trust pursuant to this Plan, the amount of the Plan Carve Out provided to the Liquidating Trust shall be reduced by the amount of such Claims paid previously.

(110)  **Plan Carve Out Claims** means Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Miscellaneous Secured Claims.

(111)  **Plan Default Notice** shall have the meaning set forth in Section 16.03 of this Plan.

(112)  **Plan Distribution** means the payment or distribution under this Plan of Cash, assets, securities or instruments evidencing an obligation under this Plan or other property of any nature to any Holder of an Allowed Claim.

(113)  **Plan Documents** means all documents, forms, lists and agreements contemplated under this Plan (including, but not limited to the Plan Supplement) to effectuate the terms and conditions hereof.

(114)  **Plan Supplement** means any supplement to this Plan, and the compilation of Plan Documents and forms of documents and Exhibits to this Plan, as amended, modified or supplemented from time to time, to be Filed by the Debtor as permitted herein on or before the Plan Supplement Filing Date.

(115)   **Plan Supplement Filing Date** means the date not later than five (5) days before the Voting Deadline, which date may be modified by agreement between the Debtor, the Indenture Trustee and the Purchaser.

(116)   **Purchaser** means the Qualified Bidder that submitted the Successful Bid

(117)   **Priority Non-Tax Claims** means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in Bankruptcy Code section 507(a).

(118)   **Priority Tax Claim** means a Claim that is entitled to priority pursuant to Bankruptcy Code section 507(a)(8).

(119)   **Pro Rata** means that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

(120)   **Professional** means any professional (a) employed in the chapter 11 Case pursuant to Bankruptcy Code sections 156, 327, 328, 363 or 1103 and compensated for services rendered either (b) (i) pursuant to Bankruptcy Code sections 327, 328, 329, 330 or 331; or (ii) seeking compensation and reimbursement as an administrative expense of the Debtor's Estate.

(121)   **Professional Fee Claim** means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(122)   **Proof of Claim (or Interest)** means the proof of claim (or interest) that must be Filed by a Holder of a Claim (or Interest) by the date(s) designated by the Bankruptcy Court as the Bar Date.

(123)   **Proposed Acquired Property** means the Debtor's assets that a Qualified Bidder bids on.

(124)   **Purchaser** means the Person or group that is the Successful Bidder under the Bid Procedures and that purchases the Acquired Property pursuant to the Sale Order and/or the Confirmation Order.

(125)   **Qualified Bidder(s)** shall have the meaning set forth in the Bid Procedures.

(126)   **Qualifying Bid** shall have the meaning set forth in the Bid Procedures.

(127)   **Refund Claim** means the Allowed Claim or any right of any present Resident or Former Resident of the Facility for all or a portion of an Entrance Fee under the Life Care Residence Agreements.

(128)   **Related Persons** means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-

holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

(129)  **Released Parties** means, collectively and individually, the Debtor, the DIP Lenders, the Indenture Trustee and the Bondholders, and each of their respective Related Persons.

(130)  **Residence Agreements** means occupancy, residency, leases, tenancy and similar written agreements entered into in the Ordinary Course of Business with Residents of the Facility, including any amendments, modifications, supplements, renewals and extensions thereof.

(131)  **Residence Deposits** means all deposits, initial service fees, entrance fees and advances of any kind or nature from any Resident.

(132)  **Resident** means a natural person occupying the Facility or any part thereof pursuant to a Residence Agreement.

(133)  **Resident Claim** means any Claim of a Resident or a Former Resident arising pursuant to his or her Residence Agreement or Former Residence Agreement, as applicable.

(134)  **Resident Council** means the council of Residents in the chapter 11 Case.

(135)  **Resident Counsel** means Patricia Reed Constant, counsel for the Residents Council.

(136)  **Retained Avoidance Actions** means all Avoidance Actions that the Debtor or its Estate may hold that are not Acquired Avoidance Actions.  For the avoidance of doubt, Retained Avoidance Actions shall not include any Claims or Causes of Action against any Released Parties.

(137)  **Retained Avoidance Action Proceeds** means the proceeds of the resolution of Retained Avoidance Actions.

(138)  **Retained Causes of Action** means all Causes of Action that the Debtor or its Estate may hold that are not Acquired Causes of Action.  For the avoidance of doubt, Retained Causes of Action shall not include any Claims or Causes of Action against any Released Parties.

(139)  **Retained Causes of Action Proceeds** means the proceeds of the resolution of Retained Causes of Action.

(140)  **Sale Hearing** means the hearing(s) held by the Bankruptcy Court to consider approval of the Successful Bid, which may be combined with the Confirmation Hearing, as such hearing may be continued from time to time.

(141)  **Sale Order** means an Order of the Bankruptcy Court, in form and substance approved by Purchaser pursuant to, *inter alia*, sections 105, 363 and 365 of the Bankruptcy Code (a) authorizing and approving, *inter alia*, the sale of the Acquired Assets to Purchaser on the terms and conditions set forth herein, free and clear of all Liens and Liabilities (other than Permitted

Liens and Assumed Liabilities) to the extent permissible under section 363(f) of the Bankruptcy Code, (b) authorizing and approving the assumption and assignment of the Assigned Contracts and the Assigned Residence Agreements to Purchaser, (c) containing a finding that Purchaser has acted in "good faith" within the meaning of, and is entitled to the protections of, section 363(m) of the Bankruptcy Code, (d) containing a finding that the Asset Purchase Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, (e) containing a finding that the Debtor and Purchaser have not engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code, (f) providing that the Asset Purchase Agreement and the Transactions may, subject to the terms set forth therein, be specifically enforced against and binding upon, and not subject to rejection or avoidance by the Debtor or its Estate or any chapter 7 or chapter 11 Bankruptcy Code trustee of the Debtor or other representative of its estate, (g) providing that the Bankruptcy Court shall retain jurisdiction to resolve any controversy or Claim arising out of or relating to the Asset Purchase Agreement or the breach thereof, (h) providing that neither Purchaser nor any of its Affiliates shall be deemed a successor in interest to the Debtor, and (i) providing that, upon Purchaser's payment of the consideration provided under the Asset Purchase Agreement, Purchaser shall have received fair and reasonably equivalent value for the Acquired Assets, which order may be the same as the Confirmation Order.

(142)   **Sale Proceeds** means all of the sale proceeds received from the sale, disposition, collection or other monetization of the Acquired Property as contemplated under the Asset Purchase Agreement, including, without limitation, any such funds held in deposit or in escrow under or in connection with the Asset Purchase Agreement.

(143)   **Scheduled** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Bankruptcy Schedules.

(144)   **Secured** means, when referring to a Claim: (i) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); or (ii) Allowed pursuant to this Plan as a Secured Claim.

(145)   **Securities Act** means the Securities Act of 1933, 15 U.S.C. sections 77a-77aa, as now in effect or hereafter amended.

(146)   **Seniority** means Seniority, Inc., a California for-profit corporation that is owned by SQLC and provides management services to senior living communities, including the Debtor.

(147)   **Seniority Claims** means any Claim of Seniority against the Debtor, including, without limitation, any Claim for accrued and unpaid management fees owing to Seniority.

(148)   **Series 2017A Bonds** means the Issuer's Retirement Facility Revenue Bonds (SQLC Senior Living Center at Corpus Christi, Inc. – Mirador Project) Series 2017A.

(149)  **Series 2017A Note** means that certain promissory note evidencing the Debtor's obligation to repay the Series 2017A Bonds, issued pursuant to and entitled to the benefits of the Master Indenture.

(150)  **Series 2017B Note** means that certain promissory note evidencing the Debtor's obligation to repay the principal amount of $2,830,306 and accrued interest to SQLC, issued pursuant to and entitled to the benefits of the Master Indenture.

(151)  **SQLC** means Senior Quality Lifestyles Corporation, a Texas nonprofit corporation that serves as the sole corporate member of the Debtor.

(152)  **SQLC Claims** means any Claim of SQLC or SQLC LSA against the Debtor, including, without limitation, any Claim in connection with the Series 2017B Note, the SQLC LSA Note, the SQLC Subordinated Notes and any Claim for accrued and unpaid management fees or overhead reimbursement costs or fees owing to SQLC.

(153)  **SQLC LSA** means SQLC LSA, LLC, a Texas limited liability company, the sole member of which is SQLC, and which was formed to provide liquidity support in connection with certain tax-exempt bond financings to benefit the Debtor and certain other continuing care retirement communities of which SQLC serves as sole member.

(154)  **SQLC LSA Note** means that certain promissory note evidencing the Debtor's obligation to repay the principal amount of $2,500,000 and accrued interest and fees pursuant to that certain Liquidity Support Agreement, dated as of March 1, 2010, by and among the Debtor, SQLC LSA and the Indenture Trustee.

(155)  **SQLC Subordinated Notes** means those certain promissory notes evidencing the Debtor's obligation to repay the cumulative principal amount of $6,288,832 and accrued interest to SQLC and which are subordinate in all respects to the Series 2017A Bonds.

(156)  **Stalking Horse** means Ronald E. Jennette, Trustee, as trustee of the Aldergate Trust, a Texas trust and such other buyer as identified in the Stalking Horse APA whether or not such party is the Successful Bidder at the Auction.

(157)  **Stalking Horse APA** means the *Asset Purchase Agreement* dated February 8, 2019, as amended, restated, or otherwise modified from time to time, entered into between the Debtor and the Stalking Horse.

(158)  **Successful Bid** has the meaning set forth in the Bid Procedures.

(159)  **Transaction(s)** means the transactions contemplated by the Asset Purchase Agreement and approved by the Sale Order and/or Confirmation Order.

(160)  **Trust Beneficiaries** means any beneficiary of any or all of the Liquidating Trust Assets.

(161)  **Unclaimed Property** has the meaning set forth in Section 8.03 of this Plan.

(162)   **Unimpaired** means a Claim or Interest that is not Impaired.

(163)   **Voting Deadline** means the date by which a Creditor must deliver a Ballot to accept or reject this Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to this Plan.

(164)   **Voting Record Date** means the record date for voting on this Plan, which shall be March 11, 2019.

(165)   **Wind Down Budget** means the wind down budget attached to the Plan Supplement and incorporated herein by reference pursuant to which the Liquidating Trustee shall effectuate the orderly wind-down of the Debtor's Estate in accordance with this Plan.

## Section 1.03       Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## Section 1.04       Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to legal currency of the United States of America, unless otherwise expressly provided.

## Section 1.05       Exhibits and Plan Supplement

All Exhibits, all Plan Documents, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date.  Holders of Claims and Interests may obtain a copy of the Filed Exhibits and the Plan Supplement upon written request to the Debtor's counsel.  Upon their Filing, the Exhibits and the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or at the Balloting Agent's website for this Case at https://dm.epiq11.com/Mirador.  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtor explicitly reserves the right to modify or make additions to or subtractions from any Exhibit to this Plan or the Plan Supplement and to amend, modify or supplement any Exhibit to this Plan before the Confirmation Date.

## Section 1.06       Deemed Acts

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

# ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR
## [NOT ENTITLED TO VOTE ON THE PLAN]

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III and Article IV hereof.  The Unclassified Claims are treated as follows:

### Section 2.01      Administrative Claims

Subject to the Bar Date and other provisions herein and except to the extent the holder of an Allowed Administrative Claim agrees to different and less favorable treatment, the Liquidating Trustee shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative, on the later of (a) the Effective Date, and (b) the first Business Day after the date that is thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, *provided, however*, that Allowed Administrative Claims representing obligations incurred in the ordinary course of business of the Debtor, if any, shall be paid in full in accordance with the terms and conditions of the particular transactions and any applicable agreements.  The Liquidating Trustee shall pay all U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the chapter 11 Case.  Cash payments of Allowed Administrative Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Administrative Claims, any shortfall shall be paid from the Liquidating Trust Reserve.

### Section 2.02      Bar Dates

Except for Professional Fee Claims, all requests for payment or any other means of preserving and obtaining payment of Administrative Claims (including substantial contribution claims (but not including Professional Fee Claims or Priority Tax Claims)), that have not been paid in the ordinary course, released or otherwise settled, must be filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than thirty (30) days after the Confirmation Date (the "**Administrative Claims Bar Date**").  Any request for payment of Administrative Claims that is not filed by the Administrative Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtor, the Debtor's estate, the Liquidating Trustee, the Liquidating Trust or any of their respective Affiliates or representatives.  Objections to such requests must be filed and served on the requesting party by the later of (a) sixty (60) days after the Effective Date; and (b) sixty (60) days after the filing of the applicable request for payment of such Administrative Claims.

### Section 2.03      Priority Tax Claims

Except to the extent the holder of an Allowed Priority Tax Claim agrees to different and less favorable treatment, the Liquidating Trustee shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Priority Tax Claim, Cash, in an amount equal to such Allowed

Priority Tax Claim, on the later of (a) the Effective Date; and (b) the first Business Day after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.  Cash payments of Allowed Priority Tax Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Tax Claims, any shortfall shall be paid from the Liquidating Trust Reserve.

**Section 2.04      Professional Fee Claims**

Each holder of a Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must file and serve its respective application for allowance of such Professional Fee Claim no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Court.  Objections to applications of such Professionals for compensation and/or reimbursement of expenses must be filed and served on the Liquidating Trustee and the requesting Professional no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**Section 2.05      DIP Facility Claims**

The DIP Facility Claims shall be deemed to be Allowed Secured Claims and superpriority Administrative Claims in the full amount due and owing under the DIP Facility Loan Agreement as of the Closing Date.

The DIP Facility Claims shall be paid in full, in Cash, on or before the Effective Date in full and final satisfaction, settlement and discharge of, and in exchange for, the DIP Facility Claims from the Sale Proceeds.  Thereafter, other than obligations that may arise and survive by their terms under the DIP Facility Loan Agreement or DIP Orders, all obligations under the DIP Facility Loan Agreement shall terminate.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**Section 3.01      General Notes on Classification and Treatment of Classified Claims and Interests**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests (other than Administrative Claims, Priority Tax Claims and DIP Facility Claims, which are receiving the treatment set forth in Article II) are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

**Section 3.02     Voting; Presumptions**

(a)      **Acceptance by Impaired Classes.**  Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan.  An Impaired Class of Claims shall have accepted this Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

(b)      **Voting Presumptions**.  Claims in Unimpaired Classes are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f) and, therefore, are not entitled to vote to accept or reject this Plan.  Claims and Interests in Classes that do not entitle the Holders thereof to receive or retain any property under this Plan are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code section 1126(g) and, therefore, are not entitled to vote to accept or reject this Plan.

**Section 3.03     Identification of Claims and Interests**

The following table designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes and Interest are (a) Impaired or Unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with Bankruptcy Code section 1126; and (c) deemed to accept or reject this Plan.

| Class | Impairment | Treatment | Entitled to Vote |
|---|---|---|---|
| Class 1 - Priority Non-Tax Claims | Unimpaired | Paid in full in Cash on the Effective Date | No (Deemed to accept) |
| Class 2 – Secured Bond Claims | Impaired | See Section 4.02 | Yes (Entitled to vote to accept or reject) |
| Class 3 – Resident Claims | Unimpaired | Paid by the Purchaser as provided under the applicable Residence Agreement or Former Residence Agreement | No (Deemed to accept) |
| Class 4 – General Unsecured Claims | Impaired | Cash Distribution of 14.3%.  See Section 4.04 of the Plan | Yes (Entitled to vote to accept or reject) |
| Class 5 – Miscellaneous Secured Claims | Unimpaired | Paid in full in Cash on the Effective Date | No (Deemed to accept) |
| Class 6 – SQLC Claims | Impaired | Canceled | No (Deemed to reject) |
| Class 7 – Seniority Claims | Impaired | Canceled | No (Deemed to reject) |

| Class | Impairment | Treatment | Entitled to Vote |
|---|---|---|---|
| Class 8 –Interests | Impaired | Canceled | No (Deemed to reject) |

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

### Section 4.01    Priority Non-Tax Claims

Classification:  Class 1 consists of the Allowed Priority Non-Tax Claims.

Treatment:  Except to the extent that a Holder of an Allowed Claim in Class 1 has agreed in writing with the Debtor (or the Liquidating Trustee) and the Indenture Trustee to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class 1 shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, such Claim, at the election of the Liquidating Trustee, (a) Cash equal to the amount of such Allowed Claims in Class 1, in accordance with Bankruptcy Code section 1129(a)(9), on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter); and (ii) the date such Claim in Class 1 becomes an Allowed Claim in Class 1 (or as soon as reasonably practicable thereafter); and (b) such other treatment agreed to by the Debtor, Liquidating Trustee, and the Indenture Trustee required to render such Allowed Claims in Class 1 Unimpaired pursuant to Bankruptcy Code section 1124.  Cash payments of Allowed Claims in Class 1 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Non-Tax Claims, any shortfall shall be paid from the Liquidating Trust Reserve.

Voting: Claims in Class 1 are Unimpaired.  The Holders of Claims in Class 1 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f) and, therefore, shall not be entitled to vote to accept or reject this Plan.

### Section 4.02    Secured Bond Claims

Classification:  Class 2 consists of the Allowed Secured Bond Claims.

Allowance:  The Secured Bond Claims shall be (a) deemed Allowed in the amount of $74,576,711; and (b) secured by a valid, binding, and perfected security interest in and to the properties and assets of the Debtor pledged under the Bond Financing Documents, including, without limitation, the Asset Purchase Agreement and the Sale Proceeds or liquidation of the Debtor's property and assets.

Treatment:  In full and final satisfaction of, and in exchange for the Allowed Secured Bond Claims, the Indenture Trustee shall receive, on behalf of the Holders of the Secured Bond Claims:

(a)    on or as soon as reasonably practicable after the Effective Date, from the Purchaser, all of the Sale Proceeds, after payment of the DIP Facility Claims in full, except for any portion of such proceeds transferred by the Purchaser to the Liquidating Trust to fund the (a) Claims Reserve as described in Section 9.03 of this Plan; (b) Liquidating Trust Reserve as described in Section

6.02(2) of this Plan; and (c) Gift Reserve as described in Section 9.04 of this Plan;

(b) on or as soon as reasonably practicable after the Effective Date, from the Debtor, contemporaneously with the payment from the Purchaser in clause (i) above, all Available Cash, if any, except for the amounts transferred to the Liquidating Trust to fund the Claims Reserve and the Liquidating Trust Reserve pursuant to Article VI of this Plan;

(c) on or as soon as reasonably practicable after the Effective Date, the Net Proceeds of the sale, collection or other monetization of all or each a portion of the Other Assets, except for Retained Causes of Action which shall be liquidated for the benefit of the Holders of Allowed Plan Carve Out Claims and Allowed General Unsecured Claims until satisfaction in full of such Allowed Claims, at which time any remaining funds in the Gift Reserve or the Litigation Proceeds Reserve shall be transferred to the Indenture Trustee;

(d) on or as soon as reasonably practicable after the Effective Date, any remaining funds in the Claims Reserve after the payment of the Allowed Plan Carve Out Claims;

(e) any remaining funds in the Liquidating Trust Reserve on the date the Liquidating Trust is terminated;

(f) as soon as reasonably practicable after receipt by the Liquidating Trustee, all amounts in the Undeliverable Distribution Reserve that have been forfeited by Holders of Claims in accordance with this Plan; and

(g) on or as soon as reasonably practicable after the one (1) year anniversary of the Closing Date, any and all funds disbursed to the Debtor or its successor, including the Liquidating Trust, from the Holdback Escrow Account (the "**Holdback Funds**").

The Indenture Trustee shall disburse the funds received pursuant to this Section in accordance with the Bond Financing Documents.

In the event sufficient Sale Proceeds exist to pay the Allowed Secured Bond Claims in full, the Holders of the Secured Bond Claims shall be entitled to amend their Claim as necessary to allow recovery of all other amounts to which the Holders of the Secured Bond Claims would be entitled under the Bond Financing Documents which might not otherwise be set forth in their Allowed Claim, such as interest and legal fees.

To the extent that the amounts received by the Indenture Trustee as provided herein are less than the amount of the Allowed Secured Bond Claims, the shortfall shall be a "Secured Bond Deficiency Claim" and shall be treated as an Allowed General Unsecured Claim in Class 4; provided, however, if (a) Class 4 of General Unsecured Claims in this Plan vote to accept this Plan by the requisite statutory majority provided in Bankruptcy Code section 1126(c); and (b) the validity, extent, or priority of the Holders of the Secured Bonds Liens are not challenged by the Debtor, a Creditor, or any other party-in-interest, then the Secured Bond Deficiency Claim is waived and shall not become a General Unsecured Claim in any Class under this Plan.

Voting: Claims in Class 2 are Impaired. The Holders of Claims in Class 2 shall be entitled to vote to accept or reject this Plan.

**Section 4.03        Resident Claims**

Classification:  Class 3 consists of all Allowed Resident Claims.

Treatment:    The rights of Holders of Allowed Resident Claims shall be unaltered and unaffected by the Plan.  Pursuant to the Asset Purchase Agreement and Sale Order, the Assigned Residence Agreements and all obligations thereunder will be assumed and assigned by the Debtor to the Purchaser and the Purchaser will assume any and all Refund Claims with no modification thereto.  Allowed Resident Claims will be paid by the Purchaser in the ordinary course of business as they become due under the applicable Residence Agreement or Former Residence Agreement.

Voting:    Claims in Class 3 are Unimpaired.  The Holders of Claims in Class 3 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f) and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Section 4.04        General Unsecured Claims**

Classification:  Class 4 consists of all Allowed General Unsecured Claims.

Treatment:  Each Holder of an Allowed General Unsecured Claim in Class 4 shall receive from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, and in full and final satisfaction of and in exchange for such Allowed General Unsecured Claims, their Pro Rata share of the sum of (a) the Gifted Amount plus the aggregate Cash from Retained Causes of Action Proceeds, less (b) any amounts of the Gift Reserve or the Litigation Proceeds Reserve required to satisfy the Allowed Plan Carve Out Claims as provided in this Plan.

Voting: Claims in Class 4 are Impaired.  The Holders of Claims in Class 4 shall be entitled to vote to accept or reject this Plan.

**Section 4.05        Miscellaneous Secured Claims**

Classification:  Class 5 consists of Miscellaneous Secured Claims.

Treatment:    On or as soon as reasonably practicable after the latest to occur of (a) the Effective Date; and (b) the date on which each such Class 5 Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement and release of and in exchange for such Allowed Class 5 Claim, at the election of the Liquidating Trustee (with the prior written consent of Indenture Trustee), (i) such treatment in accordance with Bankruptcy Code section 1124 as may be determined by the Bankruptcy Court; (ii) payment in full, in Cash, of such Allowed Class 5 Claim; (iii) satisfaction of any such Allowed Class 5 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code section 506(b); or (iv) providing such Holder with such treatment in accordance with Bankruptcy Code section 1129(b) as may be determined by the Bankruptcy Court.  Cash payments of Allowed Claims in Class 5 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Gift Reserve or from the Litigation Proceeds Reserve.

<u>Voting</u>:  Claims in Class 5 are Unimpaired.  Each Holder of an Allowed Claims in Class 5 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Section 4.06      SQLC Claims**

<u>Classification</u>:  Class 6 consists of all SQLC Claims against the Debtor.

<u>Treatment</u>:   On the Effective Date, all of the SQLC Claims as of the Effective Date shall be eliminated, extinguished and cancelled.  Holders of the SQLC Claims shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such SQLC Claims.

<u>Voting</u>:  Claims in Class 6 are deemed to have rejected this Plan and, accordingly are not entitled to vote to accept of reject this Plan.

**Section 4.07      Seniority Claims**

<u>Classification</u>:  Class 7 consists of all Seniority Claims against the Debtor.

<u>Treatment</u>:   On the Effective Date, all of the Seniority Claims as of the Effective Date shall be eliminated, extinguished and cancelled.  Holders of the Seniority Claims shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Seniority Claims.

<u>Voting</u>:  Claims in Class 7 are deemed to have rejected this Plan and, accordingly are not entitled to vote to accept of reject this Plan.

**Section 4.08      Interests**

<u>Classification</u>:  Classes 8 consists of all Interests in the Debtor.

<u>Treatment</u>:   All of the Class 8 Interests outstanding as of the Effective Date shall be eliminated, extinguished and cancelled.  Pursuant to Bankruptcy Code section 1129(b)(2)(C), Holders of Interests shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Interests.

<u>Voting</u>:  Interests in Class 8 are Impaired.  The Holders of Allowed Interests in Class 5 are deemed to have rejected this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

**ARTICLE V**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

**Section 5.01      Designation of Unimpaired Classes**

Classes 1 and 3 are Unimpaired.

**Section 5.02      Designation of Impaired Classes**

    (a)    **Impaired Classes of Claims**

        Classes 2, 4, 5, 6, and 7 are Impaired.

    (b)    **Impaired Classes of Interests**

        Class 8 is Impaired.

**Section 5.03      Classes Entitled to Vote**

Classes 2 and 4 are entitled to case Ballots with respect to this Plan.

**Section 5.04      Classes Not Entitled to Vote**

Classes 1 and 3 are Unimpaired under this Plan and therefore, Holders of Class 1 Claims and Class 3 Claims are not entitled to cast Ballots with respect to this Plan as they are deemed to accept this Plan in accordance with Bankruptcy Code section 1126(f).

Classes 5, 6, 7 and 8 are not entitled to receive or return Property under this Plan and are deemed to reject this Plan in accordance with Bankruptcy Code section 1126(f).

**Section 5.05      Date of Distributions on Account of Allowed Claims**

Except as otherwise specifically provided herein, or in the Asset Purchase Agreement or the Sale Order, any distributions and delivery to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Any payment, delivery or distribution by the Liquidating Trustee pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Liquidating Trustee into the United States mail.  Distributions or deliveries required to be made by this Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.

**Section 5.06      Sources of Cash for Plan Distributions**

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made pursuant to this Plan shall be obtained from the Available Cash on hand or the Purchaser.

**Section 5.07      Cram Down – Nonconsensual Confirmation**

If each Impaired Class of Claims entitled to vote shall not accept this Plan by the requisite statutory majority provided in Bankruptcy Code section 1126(c) or 1126(d), the Debtor requests

Confirmation of this Plan under Bankruptcy Code section 1129(b). In that event, the Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification or any other reason in its discretion, but no such modification may adversely affect an extant Purchaser (except with Purchaser's consent).

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THIS PLAN
## AND POST EFFECTIVE DATE GOVERNANCE

**Section 6.01       Sale of the Acquired Property**

This Plan contemplates the sale of the Acquired Property to a third-party. To effect this, the Debtor Filed the Bid Procedures and Sale Motion which seeks, *inter alia*, to approve the Stalking Horse APA and to establish the Auction. On ____, the Bankruptcy Court entered the Bid Procedures Order, which established March 22, 2019 as the deadline for Qualified Bidders to submit bids for the Proposed Acquired Property, and established _____ as the date for the Auction. In connection with the Auction, the Debtor identified the Stalking Horse as a potential purchaser for the Assets. If no timely Qualifying Bid (as defined in the Bid Procedures) (other than the Stalking Horse bid) is received by the Bid Deadline (as defined in the Bid Procedures), the Debtor shall not hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse APA as the Asset Purchase Agreement and declare the Stalking Horse to be the Purchaser. If additional Qualified Bidders are identified, at the conclusion of the Auction, the Debtor, with the consent of the Indenture Trustee, will seek Bankruptcy Court approval to sell the Acquired Property pursuant to the Asset Purchase Agreement to the Purchaser, Free and Clear. The Sale Order and/or the Confirmation Order shall contain specific authority for the Debtor to comply with the Asset Purchase Agreement as set forth above.

**Section 6.02       Application of Sale Proceeds**

(1)       **Claims Reserve Funding.** Contemporaneously with the Closing, the Effective Date, the payment of the DIP Facility Claims from the Sale Proceeds and the delivery of the Net Sale Proceeds to the Indenture Trustee described below, the Debtor will transfer from its Available Cash an amount sufficient to fund the Claims Reserve for the benefit of the Holders of Allowed Plan Carve Out Claims (and, to the extent of any surplus from such reserve after the payment of such Allowed Claims, for the benefit of the Holders of Secured Bond Claims) to the Liquidating Trust to fund the Claims Reserve. After the payment of Allowed Plan Carve Out Claims, any remaining funds in the Claims Reserve shall be transferred to the Indenture Trustee for the benefit of Holders of Allowed Secured Bond Claims. If the amount of the Debtor's Available Cash at the time of the Closing is insufficient to fund the Claims Reserve in full, then the Purchaser shall transfer a portion of the Sale Proceeds (in an amount equal to such insufficiency (the "**Claims Reserve Contribution**")) to the Liquidating Trust (rather than being transferred to the Indenture Trustee as described below) to complete the funding of the Claims Reserve.

(2)       **Liquidating Trust Reserve Funding.** If there is additional Available Cash after the Claims Reserve is funded, then the Debtor will transfer an amount sufficient to fund the Liquidating Trust Reserve in full from its Available Cash to the Liquidating Trust to fund the

Liquidating Trust Reserve. If the amount of the Debtor's Available Cash after funding the Claims Reserve is less than the Liquidating Trust Reserve, the Purchaser shall transfer a portion of the Sale Proceeds equal to the shortfall (the "**Liquidating Trust Contribution**") to the Liquidating Trust (rather than being transferred to the Indenture Trustee as described below) to fund the Liquidating Trust Reserve.

(3)      **Payment of Secured Bond Claims.** Contemporaneously with and as part of the Closing, the Purchaser shall transfer to the Indenture Trustee all of the Net Sale Proceeds (including the release of any deposit paid pursuant to the Asset Purchase Agreement or Bid Procedures) and any subsequent adjustments or payments received from the Purchaser pursuant to the Asset Purchase Agreement or the Sale Order, less (a) the amount required to pay the DIP Facility Claims in full; (b) any portion of the Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Claims Reserve for a shortfall in the Debtor's Available Cash described above; (c) any portion of the Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Liquidating Trust Reserve for a shortfall in the Debtor's Available Cash described above; and (d) the Gifted Amount. In the event that the Holders of Allowed Secured Bond Claims are paid in full, excess amounts of the Net Sale Proceeds shall be transferred to the Liquidating Trust Reserve.

## Section 6.03      Gift Reserve Funding

The Purchaser, on behalf of the Bondholders, shall transfer and/or gift a portion of the Net Sale Proceeds equal to the Gifted Amount to the Liquidating Trust to fund the Gift Reserve for the benefit of the Holders of Allowed General Unsecured Claims in Class 4.

## Section 6.04      Available Cash

After the Claims Reserve and Liquidating Trust Reserve are funded, any remaining Available Cash shall be transferred to the Indenture Trustee, as applicable, for the benefit of the Holders of Allowed Secured Bond Claims.

## Section 6.05      Other Assets

Any Other Assets (excluding Retained Causes of Action), shall be transferred to the Liquidating Trust for the benefit of the Holders of Secured Bond Claims. Except as otherwise provided in the Purchase and Sale Agreement, any assets received by the Liquidating Trust after the Effective Date of this Plan (other than the proceeds of Retained Causes of Action) shall also be Other Assets and transferred to the Liquidating Trust for the benefit of the Holders of Secured Bond Claims.

## Section 6.06      Retained Causes of Action

All Retained Causes of Action are transferred to the Liquidating Trust for the benefit of the Holders of Allowed General Unsecured Claims in Class 4.

**Section 6.07     Vesting of Liquidating Trust Assets**

On the Effective Date, and as set forth in the Liquidating Trust Agreement and herein, the Liquidating Trust Assets, including, without limitation: (a) the Claims Reserve Contribution; (b) the Liquidating Trust Contribution; (c) Contributed Available Cash; and (d) all Retained Causes of Action, including the attorney-client privilege related to all Retained Causes of Action, shall be irrevocably transferred to and vest in the Liquidating Trust Free and Clear of all Liens, Claims, charges and encumbrances.

**Section 6.08     Asset Purchase Agreement and Related Documents**

(1)     **General.**     On the Closing Date, the transactions contemplated by the Asset Purchase Agreement and any documents in connection therewith shall be consummated, and the Acquired Property shall be sold and transferred to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Plan in exchange for the consideration set forth in the Asset Purchase Agreement.

(2)     **Amendment.**     To the extent that material amendments are needed to the Asset Purchase Agreement, the Debtor shall File the Asset Purchase Agreement as so amended (and any related documents) on or before the Plan Supplement Filing Date.  After the Confirmation Date, the Debtor may modify the Asset Purchase Agreement or any other documents in accordance with the terms of the Asset Purchase Agreement in furtherance of the transactions contemplated thereby without the need for further notice or Court approval.

**Section 6.09     Creation of Liquidating Trust**

As set forth herein, this Plan provides for the creation of a Liquidating Trust with the Liquidating Trust Assets and for the distribution and delivery of said assets in accordance with the terms of this Plan and the Liquidating Trust Agreement.

**Section 6.10     Governance Documents**

On the Effective Date, the Governance Documents of Mirador shall be amended and restated as necessary to effectuate this Plan.

**Section 6.11     Officers and Directors**

On the Effective Date, except to the extent that the Liquidating Trustee determines otherwise, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith.  The Debtor may file with the Office of the Secretary of State for the state of its formation, a certificate of dissolution which may be executed by the Liquidating Trustee without the need for further approval or action from any officers, directors, Interest holders of the Debtor or any other party.  From and after the Effective Date, the Debtor shall not be required to file any document, or take any other action, or obtain any approval from the Debtor's officers, directors or Interest holders, to withdraw its business operations from any states in which the Debtor previously conducted its business operations.  On the Effective Date: (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited

liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "**Governors**") of the Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); and (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of the Debtor shall vest in the Liquidating Trustee and the Liquidating Trustee shall be the sole Governor of the Debtor.

**Section 6.12      Cancellation of Existing Secured Claims**

Except as otherwise provided herein and in accordance with the Asset Purchase Agreement, upon the Effective Date, any Lien encumbering the Acquired Property shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the Debtor any Collateral or other property of the Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

**Section 6.13      Cancellation of Interests**

On the Effective Date, all Interests in the Debtor shall be terminated and extinguished and any certificates or other documents that previously evidenced ownership of those Interests shall be deemed canceled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates and documents shall evidence no rights or Interests in the Debtor.

**Section 6.14      Authorization for Transaction**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan or the Transaction, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Debtor determines are necessary or appropriate, including the making of filings or recordings in connection with the Transaction, which actions may be set forth in a Plan Supplement Exhibit.

**Section 6.15      Preservation of Rights of Action; Settlement**

Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in this Plan, the Asset Purchase Agreement, or are expressly and specifically released in connection with this Plan, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the chapter 11 Case, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code section 1123(b): any and all rights, Claims, Retained Causes of Action

(including Retained Avoidance Actions), defenses, and counterclaims of or accruing to the Debtor or its Estate shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been Scheduled, listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (b) the Liquidating Trust does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate: (i) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; (ii) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtor; and (iii) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim Filed a Proof of Claim in the chapter 11 Case, Filed a notice of appearance or any other pleading or notice in the chapter 11 Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that the Debtor has, or may have, as of the Effective Date. The Liquidating Trust may, subject to this Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Liquidating Trust.

## Section 6.16      Employee Benefit Plans

Before the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law. Neither the Purchaser nor the Debtor shall have any liability for any obligations under any Employee Benefit Plan.

## Section 6.17      Exclusivity Period

The Debtor shall retain the exclusive right to amend or modify this Plan, and to solicit acceptances of any amendments to or modifications of this Plan, through and until the earlier of (a) the Effective Date; and (b) the expiration of the Debtor's exclusive period to solicit acceptances of this Plan under Bankruptcy Code section 1121(d).

## Section 6.18      Effectuating Documents

The Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Liquidating Trustee shall be authorized to certify or attest to any of

the foregoing actions. The Debtor is authorized to perform its obligations under the Asset Purchase Agreement, this Plan and the Sale Order.

## Section 6.19      Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected pursuant to the Asset Purchase Agreement or by mergers, provided under this Plan, from the Debtor to the Purchaser or any other Person or Entity pursuant to this Plan or the Asset Purchase Agreement, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the sale and/or Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## Section 6.20      Liquidating Trustee Closing of the Chapter 11 Case

When (a) the Bankruptcy Court has adjudicated all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder; (b) all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Debtor's chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE VII

# LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

## Section 7.01      The Liquidating Trust

This Section provides a general description of the Liquidating Trust and its provisions. The Liquidating Trust Agreement shall be included in the Plan Supplement, and must be acceptable to the Indenture Trustee in form and substance. To the extent this Section is inconsistent with the Liquidating Trust Agreement, the Liquidating Trust Agreement shall control for all purposes.

## Section 7.02      The Creation of the Liquidating Trust

On or before the Effective Date, the Debtor shall take all necessary steps to establish the Liquidating Trust by the execution and delivery of the Liquidating Trust Agreement.

## Section 7.03      Purpose of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of Texas, shall be established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Liquidating Trust Agreement.

## Section 7.04        Funding of Res of Trust

On the Effective Date, and as set forth in the Liquidating Trust Agreement, the Liquidating Trust Assets, including, without limitation: (a) the Claims Reserve Contribution; (b) the Liquidating Trust Contribution; (c) Contributed Available Cash; (d) the Gifted Amount; and (e) all Retained Causes of Action, including the attorney-client privilege related to all Retained Causes of Action, shall be irrevocably transferred to and vest in the Liquidating Trust Free and Clear of all Liens, Claims, charges and encumbrances.  For all U.S. federal income tax purposes, all Persons (including, without limitation, the Debtor and the Liquidating Trustee and the Trust Beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Trust Beneficiaries followed by (b) the transfer by the Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets.  The Liquidating Trust will be treated as a grantor trust for U.S. federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.  The Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata (by Class or category of Claim) portion of the Liquidating Trust Assets for U.S. federal income tax purposes.  On and after the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and compromise or settle any Claims, without the supervision of or approval by the Bankruptcy Court, and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions expressly imposed by this Plan, the Confirmation Order or the Liquidating Trust Agreement.  Except as otherwise provided in the Asset Purchase Agreement, any assets received by the Liquidating Trust after the Effective Date of this Plan shall also be Liquidating Trust Assets and transferred to and vest in the Liquidating Trust.

## Section 7.05        Administration of the Liquidating Trust

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement.  The administrative costs and expenses of the Liquidating Trust shall be funded through the Liquidating Trust Reserve (including, without limitation, the reasonable fees and expenses of the Liquidating Trustee and the reasonable fees and expenses of any professionals employed by the Liquidating Trustee).

## Section 7.06        The Liquidating Trustee

The Liquidating Trustee shall be appointed by mutual consent of the Debtor and the Indenture Trustee.  Such appointment, as well as a copy of the proposed Liquidating Trustee's resume, will be disclosed in the Plan Supplement.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Sale Order and/or the Confirmation Order.  However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. section 3713(b) and 26 U.S.C. section 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).  Subject to the Bankruptcy Court's approval and appointment of the selection of the Liquidating Trustee at the Confirmation Hearing, a Person

to be designated by the Debtor and the Indenture Trustee in the Plan Supplement shall initially serve as the Liquidating Trustee. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement. The Liquidating Trustee's liability may be limited by the Liquidating Trust Agreement to include limitations of liability for negligence and any actions except for willful misconduct or fraud.

**Section 7.07      Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan. Professionals of, among others, the Debtor, shall be eligible for retention by the Liquidating Trustee on a special counsel basis, and former employees of the Debtor shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Liquidating Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Retained Causes of Action shall be paid by the Liquidating Trust from the Liquidating Trust Reserve and amounts otherwise distributable to Holders of Allowed General Unsecured Claims. Before each payment of the Liquidating Trustee's fees, fees and expenses of the Liquidating Trustee's retained professionals and other costs, expenses and liabilities of the Liquidating Trust, the Liquidating Trustee shall provide written notice thereof to the Indenture Trustee in such detail and with such support as the Indenture Trustee may reasonably request. If the Indenture Trustee does not object to the payment of such amounts within five (5) Business Days after receipt of such notice, the Liquidating Trustee may make such payments. If the Indenture Trustee objects and the Indenture Trustee and the Liquidating Trustee cannot agree on the appropriate amount of such payment, then the Liquidating Trustee may not make such payment unless he or she obtains an order from the Bankruptcy Court approving such payment.

**Section 7.08      Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust in accordance with the provisions of this Plan and the Liquidating Trust Agreement.

**Section 7.09      Liquidating Trust Expenses**

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses

or obligations were incurred.  For example, reasonable costs incurred in resolving Retained Causes of Action and General Unsecured Claims shall be paid first from the Liquidating Trust Expense Reserve and then from amounts otherwise distributable to Holders of Allowed General Unsecured Claims, and expenses incurred in monetizing Other Assets shall be paid first from the Liquidating Trust Reserve and then from funds otherwise distributable to the Holders of Secured Bond Claims.

## Section 7.10        Liability; Indemnification

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.   Notwithstanding  such  authority,  the  Liquidating  Trustee  shall  be  under  no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, Claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; **provided, however,** that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## Section 7.11        Powers and Duties of the Liquidating Trustee

(a)        **Compromise  of  Claims.**    The  Liquidating  Trust  shall  have  full  authority  to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Liquidating Trust Agreement, including but not limited to the restrictions set forth in Section 11.01 of this Plan.  As to any Claims that may arise or exist after the Effective Date relating to or arising out of the Asset Purchase Agreement, the Liquidating Trustee shall not compromise or resolve any such Claims without the express written consent of the Indenture Trustee and the Bondholders.

(b)        **Payment of Professional Fees.**  Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Liquidating Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.  Before settling or compromising any Plan Carve Out Claims or interests related thereto, the Liquidating Trustee shall provide written notice to the Indenture Trustee of the terms and conditions of the proposed settlement or compromise.

(c)        **Request for Expedited Tax Review.**  The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through

the Effective Date.

(d)     **Access and Preservation of Records.**  The Liquidating Trustee shall be granted access to, among other things, the offices, books, and records relating to the Debtor or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Asset Purchase Agreement.

## Section 7.12     Distribution Procedures

Any payments or distributions to be made by the Liquidating Trustee to holders of Claims as required by this Plan shall be made only to the holders of Allowed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  No distribution will be made on account of a Claim or Interest to the extent that such Claim or Interest has been Disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid, including, without limitation, payments by third-party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Liquidating Trustee may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of this Plan.  The Liquidating Trustee will make no distributions upon a Claim held by a party against whom the Liquidating Trustee asserts any Avoidance Action until resolution of the Avoidance Action by settlement or judgment or as otherwise provided by Bankruptcy Court order.

## Section 7.13     Closing of the Chapter 11 Case

The Liquidating Trustee shall have sole authority to seek to close the chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## Section 7.14     Termination

The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets have been fully resolved, abandoned or liquidated and the Liquidating Trust Assets have been distributed in accordance with this Plan and the Liquidating Trust Agreement.

## Section 7.15     Maintenance of Books and Records

The Liquidating Trustee shall retain and store such books, records, and files provided by the Debtor until such time as the Liquidating Trustee determines that retention of same is no longer necessary or required under applicable law.  The right of the Debtor or the Liquidating Trustee to seek authorization from the Bankruptcy Court for the destruction of books and records, including patient medical and billing records, prior to the expiration of any statutory period requiring that such records be maintained is preserved.

# ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### Section 8.01      Timing and Delivery of Distributions

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include the terms of the other sections of this Article and other relevant provisions of this Plan.

### Section 8.02      Method of Cash Distributions

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee.

### Section 8.03      Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee.  All amounts represented by any voided check will be held until the later of one (1) year after (a) the Effective Date; and (b) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date.  Thereafter, all such amounts shall be deemed to be "Unclaimed Property," and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

### Section 8.04      Fractional Dollars

Notwithstanding any other provision of this Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to this Plan.

### Section 8.05      Compliance with Tax Requirements

With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Liquidating Trustee within thirty (30) days from the date of such request (the "**Initial Request**"), the Liquidating Trustee may, at its option, withhold the amount required to such Person and decline to make such distribution until the information is received.  Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property.

**Section 8.06      De Minimis Distributions**

No Cash payment of less than twenty ($20.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 8.07      Setoffs**

Except for any Claim that is Allowed in an amount set forth in this Plan, the Debtor or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to this Plan in respect of such Claims, any and all debts, liabilities and Claims of every type and nature whatsoever that the Estate or the Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to this Plan or otherwise, shall constitute a waiver or release by the Debtor of any such Claims the Debtor may have against such Holder of any Claim, and all such Claims shall be reserved for and retained by the Liquidating Trustee.

**Section 8.08      Distribution Record Date**

As of the Distribution Record Date, other than with respect to any publicly held securities, all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of this Plan, there shall be no further changes in the record holders of such Claims.  The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE IX

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

**Section 9.01      Establishment of Reserve Accounts, Other Assets and Beneficiaries**

The Liquidating Trustee shall establish each of the Distribution Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Trustee).

**Section 9.02      Undeliverable Distribution Reserve**

(a)      **Deposits**.  If a distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 9.02(b) of this Plan.

(b)      **Forfeiture**.  Any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within one year after the first distribution

is made to such holder shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such Claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Liquidating Trustee, the Liquidating Trust, or their respective properties or assets.  In such cases, any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such Claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become Unclaimed Property, notwithstanding any federal or state escheat laws to the contrary and shall be available for immediate distribution by the Liquidating Trust according to Section 4.02 of this Plan.

(c)     **Disclaimer**.  The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim Holder, or (ii) obtain an executed Internal Revenue Service Form W-9 or other form required by law from any Claim Holder.

## Section 9.03     Claims Reserve

Contemporaneously with the Closing and on the Effective Date, the Debtor, and in the event of a shortfall in Available Cash as described in Section 6.02(1) of this Plan, the Purchaser, shall transfer the amount required to fund the Claims Reserve as described in Section 6.02(1) of this Plan.

## Section 9.04     Gift Reserve

Contemporaneously with and as part of the Closing and on the Effective Date, the Debtor, and in the event of a shortfall in Available Cash as described in Section 6.02(1) of this Plan, the Purchaser, shall transfer the Gifted Amount to the Liquidating Trust for benefit of first, the Holders of Allowed Plan Carve Out Claims to the extent the Claims Reserve is insufficient to satisfy such Claims; and second, the Holders of Allowed General Unsecured Claims in Class 4.  Upon satisfaction in full of all Allowed General Unsecured Claims, any remaining amounts in the Gift Reserve shall be transferred to the Indenture Trustee.

## Section 9.05     Liquidating Trust Reserve

Contemporaneously with the Closing and on the Effective Date, the Debtor, and in the event of a shortfall in Available Cash as described in Section 6.02 of this Plan, the Purchaser, shall transfer $38,000 of the Sale Proceeds to establish the Liquidating Trust Reserve, which shall be used by the Liquidating Trustee to satisfy the reasonable fees and expenses of the Liquidating Trust, the Liquidating Trustee, and any professionals retained by the Liquidating Trustee.  In the event the reasonable fees and expenses of the Liquidating Trust exceed $38,000, then all such excess fees and expenses incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.  In the event the fees and expenses of the Liquidating Trust are less than $38,000, then any remaining funds in the Liquidating Trust Reserve shall be distributed in accordance with Section 4.02(e) of this Plan.

All costs and expenses associated with the administration and winding up of the Liquidating Trust, including the storage of records and documents, shall be paid only from the funds held the Liquidating Trust Reserve and shall not be charged against any other Liquidating Trust Assets.  In no event shall the Liquidating Trustee be required or permitted to use his or her personal funds or assets to satisfy obligations of the Liquidating Trust.

**Section 9.06     Litigation Proceeds Reserve**

All the Retained Causes of Action Proceeds shall also be deposited in the Litigation Proceeds Reserve for the benefit of first, the Holders of Allowed Plan Carve Out Claims to the extent the Claims Reserve is insufficient to satisfy such Claims; and second, the Holders of General Unsecured Claims in Class 4.  Upon satisfaction in full of all Allowed General Unsecured Claims, all Retained Causes of Action Proceeds shall be for the benefit of Holders of Secured Bond Claims.

**ARTICLE X**

**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**

**Section 10.01     Assumption/Rejection**

(a)     **Assumption of Residence Agreements and Former Residence Agreements**. Pursuant to the Asset Purchase Agreement and the Sale Order, on the Closing Date, the Debtor shall assume and assign to the Purchaser:

(1)     the Life Care Residence Agreements of the Life Care Residents occupying the Facility on the Closing Date, with no modification thereto, but only to the extent such Life Care Residence Agreements remain executory pursuant to section 365 of the Bankruptcy Code;

(2)     the Residence Agreements of the Non-Life Care Residents occupying the Facility on the Closing Date, with no modification thereto, but only to the extent that such agreements remain executory pursuant to section 365 of the Bankruptcy Code; and

(3)     the Former Residence Agreements of the Former Residents whose occupancy of the Facility terminates before the Closing Date (including Residents who have provided a termination notice prior to the Closing Date) with no modification thereto, to the extent that such Former Residence Agreements remain executory pursuant to Section 365 of the Bankruptcy Code.

Upon the Debtor's assumption and assignment to the Purchaser, the Residence Agreements and the Former Residence Agreements will remain in full force and effect, and the non-debtor counterparties to such contracts shall retain all of their rights and privileges and have all liabilities and obligations under their respective Residence Agreement or Former Residence Agreement, as applicable, including any right to a Refund Claim.

In accordance with the Bid Procedures, the Debtor will provide notice to the non-debtor counterparties of its intent to assume and assign the Residence Agreements and Former Residence

Agreements, along with the proposed Cure Costs. Any party taking exception to the assumption and assignment of the Residence Agreements or Former Residence Agreements shall File a detailed statement setting forth its reason no less than four (4) days before the Sale Hearing in accordance with the Bid Procedures Order. The Bankruptcy Court shall determine any dispute as to the assumption and assignment of any Residence Agreement or Former Residence Agreement at the Sale Hearing.

(b) **Assumption of Refund Claims**. Pursuant to the Asset Purchase Agreement and the Sale Order, on the Closing Date, the Purchaser shall assume any and all Refund Claims in connection with the Residence Agreements and the Former Residence Agreements whether or not executory as of the Closing Date, with no modification therein.

(c) **Additional Agreements**. In accordance with the Bid Procedures, the Debtor will provide notice to the non-debtor counterparties of its intent to assume and assign the Assigned Contracts, along with the proposed Cure Costs. Any party taking exception to the assumption and assignment of the Assigned Contracts shall File a detailed statement setting forth its reason no less than four (4) days before the Sale Hearing in accordance with the Bid Procedures Order. The Bankruptcy Court shall determine any dispute as to the assumption and assignment of any Assigned Contract at the Sale Hearing.

On the Effective Date, and to the extent permitted by applicable law, all of the Debtor's Additional Agreements will be rejected unless such Additional Agreement: (i) is an Assigned Contract; (ii) is the subject of a motion to assume Filed on or before the Confirmation Date; or (iii) has been previously rejected or assumed.

**Section 10.02    Cure Amounts**

(a) **Residence Agreements and Former Residence Agreements**. Pursuant to the Asset Purchase Agreement and the Sale Order, the Purchaser shall pay all Cure Costs, if any, required to assume and assign the Residence Agreements and the Former Residence Agreements to the Purchaser under sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and the Purchaser shall be responsible for all post-closing liabilities in connection with the Residence Agreements and the Former Residence Agreements (the "**Resident Agreement Amounts**"). In accordance with the Bid Procedures, the Debtor will provide notice to the non-debtor counterparties of its intent to assume and assign the Residence Agreements and Former Residence Agreements, along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall File a detailed statement setting forth its reason no less than four (4) days before the Sale Hearing in accordance with the Bid Procedures Order. The Bankruptcy Court shall determine the proper amount of the Cure Costs at the Sale Hearing. The fixing of the Cure Costs shall constitute the Debtor's right to assign the Residence Agreements and the Former Residence Agreements to the Purchaser under sections 365(c) and (f) of the Bankruptcy Code.

(b) **Additional Agreements**. The Bid Procedures and the Sale Motion contemplate that Assigned Contracts will be assumed by the Debtor and assigned to the Purchaser pursuant to the Sale Order and/or the Confirmation Order. In accordance with the Bid Procedures, the Debtor will provide notice to the non-debtor counterparties of its intent to assume and assign the Assigned Contracts, along with the proposed Cure Costs. Any party taking exception to the proposed Cure

Costs shall File a detailed statement setting forth its reason no less than four (4) days before the Sale Hearing in accordance with the Bid Procedures Order. The Bankruptcy Court shall determine the proper amount of the Cure Costs at the Sale Hearing. The fixing of the Cure Costs shall constitute the Debtor's right to assign the Assigned Contracts to the Purchaser under Bankruptcy Code sections 365(c) and (f).

**Section 10.03    Assumed Executory Contracts and Unexpired Leases**

Each Assigned Residence Agreement and Assigned Contract will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to executory contracts and unexpired leases that have been executed by the Debtor during its chapter 11 Case shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**Section 10.04    Insurance Policies**

All insurance policies to which the Debtor has any rights as of the date of the Confirmation Order shall be deemed and treated as executory contracts assumed and assigned to the Liquidating Trust.

**Section 10.05    Pass-through**

Except as otherwise provided in this Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c), shall, in the absence of any other treatment under this Plan, the Asset Purchase Agreement, the Sale Order and/or the Confirmation Order, be passed through the chapter 11 Case for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the chapter 11 Case.

**Section 10.06    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtor's executory contracts and unexpired leases pursuant to this Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the date a Final Order is entered granting the rejection. Any Proofs of Claim arising from the rejection of the Debtor's executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be

enforceable against the Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's executory contracts and unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan; *provided however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

## Section 10.07    Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtor that any such Residence Agreement or Assigned Contract is in fact an executory contract or unexpired lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## Section 10.08    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtor to extend the deadline for assuming or rejecting executory contracts and unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

## Section 11.01    Expunging of Certain Claims

Except as otherwise provided by a Bankruptcy Court order, all Claims marked or otherwise Scheduled as contingent, unliquidated or disputed on the Bankruptcy Schedules and for which no Proof of Claim has been timely filed, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Bar Date without the necessity of filing a Claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

## Section 11.02    Objections to Claims

(a)    **Authority**.  The Debtor or the Liquidating Trustee (as applicable) shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims.  Except as set forth above, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  Except as

set forth above, the Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)   **Objection Deadline**.  As soon as practicable, but no later than the Claims Objection Deadline, the Debtor or the Liquidating Trustee (as applicable) may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Debtor or the Liquidating Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Liquidating Trustee, as the case may be.

## Section 11.03    Estimation of Claims

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any such Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute the maximum limitation on such Claim, as determined by the Bankruptcy Court and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

## Section 11.04    No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## Section 11.05    Distributions After Allowance

The Liquidating Trustee shall make payments and distributions from the appropriate Distribution Reserve Account to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of this Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become a Liquidating Trust Asset for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

**Section 11.06    Reduction of Claims**

Notwithstanding the contents of the Bankruptcy Schedules or the Bankruptcy SOFAs, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor before the Effective Date, including pursuant to any order of the Bankruptcy Court.  To the extent such payments are not reflected in the Bankruptcy Schedules or the Bankruptcy SOFAs, such Bankruptcy Schedules and Bankruptcy SOFAs will be deemed amended and reduced to reflect that such payments were made.  Nothing in this Plan shall preclude the Liquidating Trustee from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court before the Effective Date.

<h1 style="text-align:center">ARTICLE XII</h1>

<h2 style="text-align:center">CONDITIONS PRECEDENT TO CONFIRMATION<br>AND CONSUMMATION OF THIS PLAN</h2>

**Section 12.01    Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with the terms of this Plan:

(1)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtor, approving the adequacy of the Disclosure Statement, and such Order shall have become a Final Order.

(2)    The Confirmation Order approving and confirming this Plan, as such Plan may have been modified, amended or supplemented, shall be in form and substance reasonably acceptable to the Debtor, the Indenture Trustee and the Purchaser.

(3)    If the Purchaser purchases the Acquired Property pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order in form and substance reasonably acceptable to the Debtor, the Indenture Trustee, and the Purchaser.

(4)    There shall be no default or Event of Default (as defined in the DIP Orders) under the DIP Orders or the DIP Facility Loan Agreement.

**Section 12.02    Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms below:

(1)    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtor, Indenture Trustee, and the Purchaser, and such Order shall have become a Final Order.

(2)    If the Purchaser purchases the Acquired Property pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtor, the Indenture Trustee, and the Purchaser and such order shall have become a Final Order.

(3)     The Purchaser shall have provided written evidence satisfactory to the Debtor and the Indenture Trustee that simultaneous with the occurrence of the Effective Date, the Purchaser is prepared to close the Transaction.

(4)     The Closing shall have occurred pursuant to the Asset Purchase Agreement.

(5)     The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtor and the Indenture Trustee.

(6)     There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law, staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the Transaction(s) contemplated by this Plan.

## Section 12.03    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

## Section 12.04    Waiver of Conditions

Each of the conditions set forth above may be waived in whole or in part by the Debtor with the prior written consent of the Indenture Trustee (and the Purchaser, if applicable), which consent shall not be unreasonably withheld.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtor or the Indenture Trustee regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## Section 12.05    Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan at any time before the Confirmation Date and to File subsequent plans of reorganization.  For each revoked or withdrawn plan, or if Confirmation or Consummation of any plan does not occur, then, with respect to any such revoked or withdrawn Plan, (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtor and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor; or (iii) constitute an admission of any sort by the Debtor or any other Person.

## ARTICLE XIII

## AMENDMENTS AND MODIFICATIONS

The Debtor may alter, amend, or modify this Plan, the Plan Documents, or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time before the Confirmation Date; provided, however, that where this Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to Indenture Trustee or the Purchaser, the Debtor may not modify such document without the written consent of Indenture Trustee or the Purchaser, as applicable. Further, if any amendment, modification or supplement to this Plan (including the Plan Supplement or a modification described herein) or any Exhibit hereto or thereto is made without the prior written consent of the Indenture Trustee, then notwithstanding any other agreement to the contrary, the Indenture Trustee shall have no obligation to support, or take any actions in support of, this Plan.  After the Confirmation Date and before "substantial consummation" of this Plan, as defined in Bankruptcy Code section 1101(2), the Debtor may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Sale Order, Bid Procedures and Sale Order, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not (a) materially adversely affect the treatment of Holders of Claims or Interests under this Plan or (b) modify any provision of the Asset Purchase Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIV

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(b)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor and/or the Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise set forth in this Plan;

(c)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the

Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any Claims arising therefrom;

(d)      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the chapter 11 Case;

(e)      Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Sale Order and/or the Confirmation Order;

(f)      Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(g)      Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of this Plan, the Sale Order and/or the Confirmation Order;

(i)      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(j)      Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Sale Order and/or the Confirmation Order, the Asset Purchase Agreement, the Liquidating Trust Agreement or any other contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Sale Order and/or the Confirmation Order;

(k)      Hear and determine any disputes regarding the interpretation or implementation of the Asset Purchase Agreement;

(l)      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the chapter 11 Case or pursuant to this Plan;

(m)      Recover all assets of the Debtor and property of the Estate, wherever located;

(n)      Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o)      Hear and determine all disputes involving the existence, nature, or scope of any releases or injunctions granted in this Plan;

(p)      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(q)      Enter an order or final decree concluding or closing the chapter 11 Case; and

(r)      Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV

## EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

### Section 15.01    Compromise and Settlements

Except for those Causes of Action transferred to the Liquidating Trust, pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising before the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

### Section 15.02    Satisfaction of Claims

The rights afforded in this Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtor or its Estate, assets, properties, or interests in property. The treatment set forth in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Interest may have in or against the Debtor or the Debtor's Estate.  This treatment supersedes and replaces any agreements or rights that any Person may have in or against the Debtor, the Estate, or their respective property.  Except as otherwise provided in this Plan, the Sale Order and/or the Confirmation Order, on the Effective Date, all Claims against and Interests in the Debtor shall be satisfied and released in full.  Neither the Debtor nor its Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtor, except those expressly assumed by the Debtor and not assigned to the Purchaser.  Except as otherwise provided in this Plan, the Sale Order and/or the Confirmation Order, all Persons and Entities shall be precluded and forever barred from asserting against the Debtor and its Affiliates, its successors or assigns, or its Estate, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence before the Effective Date, whether or not the facts of or legal bases therefore were known or existed before the Effective Date.

### Section 15.03    Releases

(a)      **Releases by Debtor and Estate.**  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, the Asset Purchase Agreement, the

Sale Order and/or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious formulation and implementation of the Plan and the consummation of the transactions contemplated by the Plan, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtor, on its own behalf and as representative of its Estate, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, and extinguish unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action (including any Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtor, or its respective assets, operations, finances, property and Estate, the chapter 11 Case or the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents, the Asset Purchase Agreement, the DIP Facility, the Disclosure Statement or the Transaction that may or could have been be asserted by or on behalf of the Debtor, or its Estate.

(b)    **Release of and by Purchaser**.  On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Debtor; (ii) the Debtor's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of the Debtor; and (iv) the Liquidating Trust, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtor, its Estate, and the Liquidating Trust whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, through the Closing, save and except any Claims and/or continuing obligations under, in connection with or relating to Asset Purchase Agreement, the Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtor, on behalf of itself and its subsidiaries and affiliates (including the Liquidating Trust) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser, (ii) the Purchaser's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; and (iii) legal and financial advisors of the Purchaser, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtor, its subsidiaries and affiliates (including the Liquidating Trust) or any Entity claiming by or through the Debtor or its subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to

assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, through the Closing, save and except and/or continuing obligations under, in connection with or relating to the Asset Purchase Agreement, the Sale Order, and/or the Confirmation Order.

(c)     **Releases by Holders of Claims and Interests. Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, the Sale Order and/or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious formulation and implementation of the Plan and the consummation of the transactions contemplated by the Plan, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that (i) has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action or liability of any nature whatsoever, or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated; and (ii) marks the "CONSENT TO RELEASES" box on the Ballot shall, and shall be deemed to completely and forever release, waive, void, and extinguish unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtor, or its respective assets, operations, finances, property and Estate, the chapter 11 Case, or the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents, the Asset Purchase Agreement, the DIP Facility, the Disclosure Statement or the Transaction. Notwithstanding the foregoing or any other provision herein, no Released Party shall be released from any acts constituting criminal conduct, willful misconduct fraud, or gross negligence.**

(d)     **Injunction Related to Releases. Except as provided in this Plan, the Asset Purchase Agreement, the Sale Order and/or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Causes of Action or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest, relating to the Debtor or its assets, property and Estate, that is released pursuant to this Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such released or enjoined Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other**

proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan, the Sale Order and/or the Confirmation Order.

(e)      **Deemed Consent**.   Each Person that has submitted a Ballot and marks the "CONSENT TO RELEASES" box on the Ballot shall, and shall be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in this Section 15.03.

(f)      **Plan Obligations**.  Notwithstanding the foregoing, nothing in this Section shall release any Released Party or other Person from its respective rights and obligations under this Plan or the Confirmation Order.

## Section 15.04     Exculpation

The Released Parties **SHALL NOT BE LIABLE FOR ANY** Cause of Action arising in connection with or out of the administration of the chapter 11 Case, the planning of the chapter 11 Case, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code section 1125(e), pursuit of Confirmation of this Plan, the Consummation of this Plan, or the administration of this Plan or the Acquired Property to be sold pursuant to the Asset Purchase Agreement or to be distributed under this Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or Cause of Action against any protected Person as to which such Released Party has been exculpated from liability pursuant to the preceding sentence.

## Section 15.05     Permanent Injunction

As of the Effective Date, in each case whether or not: (i) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code section 501; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (iii) the Holder of such a Claim or Interest has accepted this Plan, and in order to, *inter alia*, preserve and promote the settlements contemplated by and provided for in this Plan, except as otherwise expressly provided in this Plan, the Asset Purchase Agreement, the Sale Order and/or the Confirmation Order, all Persons and any Person claiming by or through them, which have held or asserted, which currently hold or assert or which may hold or assert any Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Interest in the Debtor, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty shall

be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties, and/or their successors and assigns, for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest, arising before the Effective Date (including before the Petition Date), including, but not limited to:

(i)     **commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties or the assets or property of any Released Party;**

(ii)    **enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;**

(iii)   **creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;**

(iv)    **except as otherwise expressly provided in this Plan, the Sale Order and/or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest; and**

(v)     **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan Supplement, the Sale Order and/ or the Confirmation Order relating to such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest.**

(a)    **No Waiver.**  Notwithstanding anything to the contrary contained in this Plan, the releases and injunctions set forth in this Plan shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, Claims and other matters expressly retained by the Liquidating Trust or the Purchaser pursuant to this Plan or the Asset Purchase Agreement, the Sale Order and/or the Confirmation Order.

(b)    **Bankruptcy Rule 3016 Compliance.**  The Debtor's compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(c)    **Integral to Plan.**  Each of the injunctions provided herein is an integral part of this Plan and is essential to its implementation.  Each of the Released Parties and any other Persons protected by the injunctions set forth herein shall have the right to independently seek the enforcement of such injunctions.

## Section 15.06    Setoffs

Except as otherwise expressly provided for in this Plan, the Sale Order and/or the Confirmation Order pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, the Debtor may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to this Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by the Debtor of any such Claims, rights, and Causes of Action that the Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff or offset any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or its successors or assigns unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff within thirty (30) days of the Effective Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or offset pursuant to Bankruptcy Code section 553 or otherwise.  **Failure by a Holder of Claims or Interests to assert the right to setoff or recoupment within this thirty (30) period shall result in a permanent waiver of the right to setoff by the Holder and the Claim will no longer be enforceable against the Debtor, its successors or assigns.**

## Section 15.07    Recoupment

Except as provided in this Plan, the Sale Order and/or the Confirmation Order any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor within thirty (30) days of the Effective Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder

asserts, has, or intends to preserve any right of recoupment. **Failure by a Holder of Claims or Interests to assert the right to recoupment within this thirty (30) period shall result in a permanent waiver of the right to setoff or recoupment by the Holder and the Claim will no longer be enforceable against the Debtor, its successors or assigns.**

**Section 15.08     Release of Liens**

      Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and its successors and assigns.

**Section 15.09     Good Faith**

      As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptance or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

**Section 16.01     Severability of Plan Provisions**

      If, before Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 16.02     Confidentiality of Information Related to Patient Care Ombudsman**

      Except as otherwise ordered by the Bankruptcy Court, no Person may seek discovery in any form, including but not limited to, by motion, subpoena, notice of deposition or request or demand for production of documents, from any Patient Care Ombudsman or his agents, professionals, employees, other representatives, designees, or assigns with respect to matters arising from or relating to the performance of the duties of the Patient Care Ombudsman in the chapter 11 Case, including, but not limited to, pleadings, reports, or other writings filed by the

Patient Care Ombudsman in or in connection with the chapter 11 Case. Nothing herein shall, in any way, limit or otherwise affect the rights and obligations of any Patient Care Ombudsman under any order of the Bankruptcy Court or under any confidentiality agreements, if any, between the Patient Care Ombudsman and any other Person or shall, in any way, limit or otherwise affect the Patient Care Ombudsman's obligation, under section 333(c)(1) of the Bankruptcy Code or other applicable law, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudsman without further order of the Bankruptcy Court.

### Section 16.03    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in this Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### Section 16.04    Binding Effect

In accordance with section 1141 of the Bankruptcy Code, this Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims against and Interests in the Debtor (whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder has filed a Proof of Claim or accepted this Plan), any Person acquiring property under this Plan, their respective successors and assigns, including, but not limited to, the Debtor, and all other parties-in-interest in the chapter 11 Case.

### Section 16.05    Notices

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtor, the Indenture Trustee, the Holders or the Liquidating Trustee shall be (a) in writing; (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission; and (c) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

SQLC Senior Living Center at Corpus Christi, Inc. d/b/a Mirador
15601 Dallas Parkway, Suite 200
Addison, Texas 75001
Attn: Scott Collier, Chairman
(469) 916-8958
scollier@sqlc.org

With a copy to (which shall not constitute notice):

Demetra L. Liggins
Thompson & Knight LLP
811 Main Street, Suite 2500
Houston, TX 77002
Email: Demetra.Liggins@tklaw.com

If to the Indenture Trustee or the Bondholders:

UMB Bank, N.A.
Attn: Virginia A. Housum
120 South Sixth Street, Suite 1400
Minneapolis, MN 55402
Email: Virginia.Housum@umb.com

With a copy to (which shall not constitute notice):

Nathan F. Coco
McDermott Will & Emery,
1200 Smith Street, Suite 1600
Houston, Texas 77002
Email: ncoco@mwe.com

If to Liquidating Trust

See Plan Supplement

## Section 16.06    Term of Injunctions or Stay

Unless otherwise provided in this Plan, the Sale Order and/or Confirmation Order, all injunctions or stays provided for in the chapter 11 Case under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan, the Sale Order and/or Confirmation Order shall remain in full force and effect in accordance with their terms.

## Section 16.07    No Admissions

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

## Section 16.08    Notice of the Effective Date

The Debtor shall file on the docket of the Bankruptcy Court a *Notice of Effective Date* stating that (a) all conditions to the occurrence of the Effective Date have been satisfied or waived with the consent of the Indenture Trustee; (b) the Effective Date has occurred and specifying the

date thereof for all purposes under this Plan; and (c) setting forth the name, address and telephone number for the Liquidating Trustee.

## Section 16.09    Default Under Plan

(a)    **Plan Default Notice.**  Except or otherwise provided for in this Plan, after the Effective Date, in the event of an alleged default by the Liquidating Trustee under this Plan, any party alleging such default shall provide written notice of default (the "Plan Default Notice") to the Liquidating Trustee at the address set forth in the Notice of Effective Date filed pursuant to this Plan with a copy thereof to the Debtor's counsel and the Indenture Trustee's counsel at the addresses set forth in this Plan and shall contemporaneously file such Plan default notice with the Bankruptcy Court.  The Liquidating Trustee shall have thirty (30) days from the receipt of a Plan Default Notice to cure any actual default that may have occurred.

(b)    **Cure.**  The Liquidating Trustee and any other party-in-interest shall have the right to dispute an alleged default that has occurred and to notify the party alleging such default that the Liquidating Trustee (or such other party-in-interest) contends no default has occurred, with such notice to be sent within the thirty-day period following receipt of a Plan Default Notice.  In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default and the remedy with respect to any remedy therefore.

(c)    **Failure to Cure.**  In the event the Liquidating Trustee (or any other party-in-interest) fails to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under applicable law.

## Section 16.10    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtor.

## Section 16.11    Plan Documents

The Plan Documents are incorporated herein and are a part of this Plan as set forth in full herein.

## Section 16.12    Entire Agreement

This Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interests relating to the subject matter hereof and supersede all prior discussions and documents.

## ARTICLE XVII

## CONFIRMATION REQUEST

The Debtor requests Confirmation of this Plan under Bankruptcy Code section 1129.  If any Impaired Class does not accept this Plan pursuant to Bankruptcy Code section 1126, the Debtor requests Confirmation pursuant to Bankruptcy Code section 1129(b).  In that event, the Debtor reserves the right to modify this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code section 1129(b) requires modification.

Dated: 2/7 , 2019

SQLC SENIOR LIVING CENTER AT CORPUS
CHRISTI, INC. D/B/A MIRADOR

By: _____

Name:  Scott Collier
Title:   Chairman of the Board